UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RA'MAR DANIELS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-03068-SEB-MJD |
| | ) | |
| DENNIS REGAL, | ) | |
| | ) | |
| Respondent. | ) | |

**Order Denying Motion to Alter or Amend the Judgment**

The petitioner's motion to reconsider the dismissal of this habeas action was filed on September 9, 2022, which is within 28 days of the date judgment was entered in this action. It is therefore treated as a motion to alter or amend judgment pursuant to Rule 59 of the *Federal Rules of Civil Procedure*. The petitioner subsequently filed a notice of appeal, but this Court retains jurisdiction to decide the Rule 59(e) motion on the merits. See Fed. R. App. P. 4(a)(4)(B)(i); *Sultan v. Fenoglio*, 775 F.3d 888, 889 (7th Cir. 2015). For the reasons explained below, the motion to alter or amend the judgment, dkt [17], is **denied.**

**I. Standard of Review**

Rule 59(e) allows a court to amend a judgment only if the movant can "demonstrate a manifest error of law or fact or present newly discovered evidence." *Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 505–06 (7th Cir. 2016) (internal citations omitted). A "manifest error" means "the district court commits a wholesale disregard, misapplication, or failure to recognize controlling precedent." *Stragapede v. City of Evanston, Illinois,* 865 F.3d 861, 868 (7th Cir. 2017) (internal quotation omitted). "A manifest error is not demonstrated by the disappointment of the losing party." *Oto v. Metropolitan Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) (internal

quotations omitted). Relief through a Rule 59(e) motion for reconsideration is an "extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).

## II. Background

Ra'Mar Daniels filed a petition for a writ of habeas corpus challenging a Pendleton Correctional Facility disciplinary proceeding identified as ISR 21-09-0039.

On September 5, 2021, Officer P. Thomas issued a Report of Conduct ("Conduct Report") charging Mr. Daniels with a violation of Offense Code A-117, Battery against a Staff Member. Dkt. 9-1 at p. 1. The Conduct Report states:

> On 09-05-2021 at approximately 5:05 p.m.[,] I, Officer P. Thomas, was called to 6D in GCH due to Offender Daniels, Ramar #104542 in 18-6D holding his cuffport hostage and refusing to let staff close it. I then delivered a 1 second drive stun to Offender Daniels left bicep. Offender Daniels pulled his arm back in and as I attempted to secure the cuffport he then stuck his arm back out, so I delivered another 1 second drive stun to his left bicep. He then pulled it back in again and as I was again attempting to secure the cuffport he then reached back out and grabbed my vest. I again delivered another 1 second drive stun to his left bicep. I was then able to secure the cuffport.

*Id*. The report was substantiated by witness statements from Sergeant J. Gray, Officer J. Downs, Officer A. Sumner, and Officer D. Ruckman. Dkt. 9-4 at pp. 1-4.

On September 24, 2021, Mr. Daniels was notified of the charge and pled not guilty. He then requested a lay advocate, a copy of the video evidence, and the Conduct Report. Dkt. 9-5. On October 4, 2021, the hearing officer reviewed the video and indicated that the video evidence supported the Conduct Report. Dkt. 9-10. A hearing was held on October 18, 2021, and Mr. Daniels again pled not guilty. Dkt. 9-9. The hearing officer found Mr. Daniels guilty based on the witnesses' statements, the Conduct Report, the Incident Report, Mr. Daniels's statements, and the video evidence. *Id*. Mr. Daniels received a loss of 180 days of earned credit time. *Id*.

Mr. Daniels completed the administrative appeals process and both appeals were denied. Dkts. 9-12 and 9-13. He then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. 1. Mr. Daniels asserted four grounds to challenge his prison disciplinary conviction: (1) that the Report of Conduct was filed in retaliation for him filing a separate civil action against the hearing officer; (2) that he was denied evidence; (3) that there was insufficient evidence to support his disciplinary conviction; and (4) that he was denied an impartial decision maker. *Id.* On September 2, 2022, Mr. Daniels's habeas petition was denied, and final judgment was entered. Dkt. 15.

### III. Discussion

Mr. Daniels now challenges the Court's conclusions regarding the sufficiency of the evidence, impartial decisionmaker, and retaliation claims. Dkt. 17 at pp. 1-2. For the reasons explained below, no relief is warranted because Mr. Daniels has not demonstrated a manifest error of law or fact or presented newly discovered evidence.

**A. Sufficiency of the Evidence**

First, Mr. Daniels argues that Court erred in concluding there was sufficient evidence to support his conviction because the Conduct Report only said that he grabbed Officer Thomas's vest, not that he assaulted him. Dkt. 17 at p. 2. In its prior order, the Court did address the sufficiency of the evidence; however, some aspects of Mr. Daniels's arguments were not explicitly identified. Dkt. 15. Thus, for clarification, the Court will explain why Mr. Daniels's arguments do not alter the Court's conclusion that there was sufficient evidence to support his conviction.

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016). The "some evidence" standard is much more lenient

than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). Further, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

The "'some evidence' standard" is "a 'meager threshold.'" *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011) (quoting *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007)). Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney v. Neal*, 723 F. App'x 347, 348 (7th Cir. 2018) (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)). A conduct report "alone" may establish the "some evidence" requirement. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).

Mr. Daniels's argument that the Conduct Report is insufficient is unpersuasive. First, the Conduct Report is sufficient because Mr. Daniels was not convicted of assault. Rather, he was charged and convicted of battery. Dkts. 9-1 and 9-9. Second, battery extends to the grabbing of clothing, in this case a vest, on a person's body. *Scott v. Brown*, No. 2:19-cv-00395-JMS-MJD, 2020 U.S. Dist. LEXIS 67723, at *3-4, 10 (S.D. Ind. Apr. 17, 2020) (holding that the evidence was sufficient to support a prisoner's battery conviction where the prisoner threw bodily fluids on an officer's clothing and person) and *Flores v. Achcroft*, 350 F.3d 666 (7th Cir. 2003) (citations omitted) (noting that "Indiana follows the common-law rule under which any contact, however

4

slight, may constitute battery. Touching anything attached to someone else, such as the person's glasses, is treated the same as touching the body.").

Additionally, Mr. Daniels contends that the evidence is insufficient because the video does not show him grabbing Officer Thomas's vest or assaulting him. Dkt. 17 at pp. 1-2. The Court reviewed the video and finds that the video is consistent with the conclusion that Mr. Daniels grabbed Officer Thomas's vest and yanked. Dkt. 14. To begin, the video shows Mr. Daniels's arm outside the cuffport and two officers talking with him for a period of time before Officer Thomas and the other officers arrived to assist with securing the cuffport. *Id.* The video also shows the officers including Officer Thomas jumping backwards from Mr. Daniels's cell as if they were attempting to avoid contact with Mr. Daniels. *Id.* The video further shows that Officer Thomas was abruptly jerked towards the doorway, that none of the other officers were touching Officer Thomas, and that no other individuals besides the officers and Mr. Daniels were present in that area. *Id.* Further, the video shows that, after another officer helped Officer Thomas regain his balance from being abruptly jerked, Mr. Daniels continuously swatted at the officers who were trying to secure his cell's cuffport. *Id.* Thus, the hearing officer's conclusion that Mr. Daniels grabbed the officer's vest and yanked is appropriate. *See also* Dkt. 9-9 (Hearing Report) (stating that Mr. Daniels reported that his "pinkie got stuck in his vest.").

In summary, there is sufficient evidence to support Mr. Daniels's conviction based on the following: the Conduct Report states that Mr. Daniels grabbed Officer Thomas's vest; the video shows that Officer Thomas was abruptly jerked towards a doorway when Mr. Daniels was the only individual within reach; and Mr. Daniels admitted his pinkie got stuck in Officer Thomas's vest.

Finally, Mr. Daniels argues that the other officers' statements do not support the Conduct Report because they do not specify that he assaulted or grabbed Officer Thomas's vest and that

5

there was no evidence that he knowingly and intentionally "assaulted" Officer Thomas because he was drugged. Dkt. 17 at pp. 1-2. Neither of these arguments undermine this Court's finding that the hearing officer had sufficient evidence to convict Mr. Daniels because in addition to the Conduct Report, the hearing officer also relied on the video and Mr. Daniels's statement. Dkt. 9-9; *see Jones*, 637 F.3d at 849 (noting that once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends) and *Eichwedel*, 696 F.3d at 675 ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.").

Moreover, there is no record that Mr. Daniels told the hearing officer that he was drugged. Dkt. 9-9. The Hearing Report does indicate that Mr. Daniels told the hearing officer that he was "in distress", "couldn't breathe," and that he was trying to get help. *Id.* Perhaps the hearing officer could have interpreted these statements to mean that Mr. Daniels did not intentionally or knowingly grab Officer Thomas's vest. But even if Mr. Daniels did tell the hearing officer that he was drugged, the hearing officer had the opportunity to consider Mr. Daniels's statements and reject them based on the other evidence presented. While Mr. Daniels was free to raise these issues before the hearing officer, a court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb*, 224 F.3d at 652).

For these reasons, the Court finds that there is sufficient evidence to support the hearing officer's decision. Accordingly, Mr. Daniels is not entitled to relief because he has not demonstrated a manifest error of law or fact or presented newly discovered evidence.

### B. Impartial Decisionmaker

Mr. Daniels also argues that the Court erred because the Court did not explicitly address his argument that the hearing officer was impartial because Mr. Daniels filed a grievance alleging that the hearing officer raped him. Dkt. 17 at pp. 1-2. Mr. Daniels further asserts that the inconsistency of the hearing officer's video review, which indicates that the video shows Mr. Daniels grabbing Officer Thomas's vest, supports his contention that the hearing officer convicted him in retaliation for his rape allegation.[1] *Id.* at p. 2; *see also* dkt. 9-10.

A prisoner in a disciplinary action possesses the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. 445, 455-56. A "sufficiently impartial" decisionmaker is necessary to shield the prisoner from the arbitrary deprivation of his liberties. *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir. 2000) (per curiam). Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *see Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, the constitutional standard for impermissible bias is high. *Piggie*, 342 F.3d at 666. Hearing officers are impermissibly biased when they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

The Court reviewed its Order and Mr. Daniels's previous filings and finds that the Court did reference the rape grievance as a "civil action" in its discussion on retaliation within its order

---

[1] Mr. Daniels also argues that the Court misconstrued his impartial decisionmaker argument by stating that Mr. Daniels asserted that the hearing officer called him names. Dkt. 17 at p. 1. The Court was interpreting Mr. Daniels's statement in his petition that the hearing officer "called Daniels out of his name" as a claim that hearing officer called him names. Dkt. 1 at p, 6, dkt. 15 at p. 6. Mr. Daniels has not explained how this misunderstanding impacts the Court's ruling or his conviction. Dkt. 17. Accordingly, the Court finds that Mr. Daniels has not demonstrated a manifest error of law or fact regarding the allegation that the hearing officer "called [him] out of his name."

7

and that it did refer to this argument in its impartial decisionmaker analysis.[2] Dkt. 15 at pp. 3, 6. However, given the convoluted nature of Mr. Daniels's filings, the Court did not fully understand Mr. Daniels's argument to mean that the rape allegation in the grievance should have disqualified the hearing officer and that the video review supports this assertion.[3] Thus, the Court will address his arguments below.

To begin, Mr. Daniels's argument that the discrepancy in the video review proves that the hearing officer was impartial is unpersuasive. While the video does not show Mr. Daniels's hand jerking Officer Thomas towards a doorway, it shows that Mr. Daniels was trying to smack the officers, that the officers were jumping back from his cell as if they were trying to avoid being hit, that no one besides Mr. Daniels was in a position to grab and jerk Officer Thomas towards the door. *Id.* Moreover, Mr. Daniels stated that "his pinkie got stuck in Officer Thomas's vest." Dkt. 9-9. Thus, the hearing officer reached the only reasonable conclusion, which is that the abrupt jerking of Officer Thomas shown on the video was Mr. Daniels grabbing Officer Thomas's vest as reported in the Conduct Report.

Further, the due process afforded to prisoners is limited. *Griffin v. Knight*, No. 1:21-cv-00757-JRS-MJD, 2021 U.S. Dist. LEXIS 247307, at *3 (S.D. Ind. Dec. 29, 2021) (noting that "Only a very narrow set of rights are mandated in prison disciplinary proceedings.") (citing *Wolff*, 418 U.S. at 563-67). While the Court finds it difficult to understand why the prison did not choose another available hearing officer instead of the hearing officer that Mr. Daniels's alleged had raped

---

[2] Mr. Daniels also argues that the Court misconstrued his argument by stating he was retaliated against for filing a "civil action." Dkt. 17 at p. 2. The Court was referencing the rape grievance not a separate civil rights lawsuit. Because Mr. Daniels alleges that he previously argued that the rape grievance was the reason for his conviction, this is not a misrepresentation.

[3] There is no dispute that Mr. Daniels filed a grievance alleged that the hearing officer raped him. The grievance was investigated, and the prison determined that the allegation unfounded. Dkt. 9 at pp. 14-15. The merits of Mr. Daniels's allegation are not before this Court.

him, this does not undermine the presumption of honesty and integrity that hearing officers are entitled to for three reasons.

First, courts have held that a hearing officer is not impartial merely because a prisoner previously filed a lawsuit or a grievance against the hearing officer on an unrelated incident. *Peters v. Anderson*, 27 F. App'x 690, 692 (7th Cir. 2001) (holding that "[p]risoners often sue multiple defendants with only tenuous connections to the factual bases of their complaints, and just being named in a lawsuit is not enough to disqualify a prison employee from serving on a CAB"); *see also Redding v. Fairman*, 717 F.2d 1105, 1113 (7th Cir. 1983) (due process does not require an automatic disqualification of hearing officers who are defendants in unrelated lawsuits filed by an inmate facing a disciplinary hearing); and *French v. Brown*, No. 2:20-cv-00053-JRS-MJD, 2020 U.S. Dist. LEXIS 227530, at *9 (S.D. Ind. Dec. 4, 2020) (holding that the disqualification of a hearing officer was not required where a prisoner filed two grievances against the hearing officer and accused the hearing officer multiple times of being biased).

Second, this Court has previously declined to differentiate between grievances of sexual violence and other types of misconduct. In a separate disciplinary proceeding challenged in a petition for writ of habeas corpus, Mr. Daniels alleged that the same hearing officer was biased against him because Mr. Daniels previously filed a grievance asserting that the hearing officer raped him. *Daniels v. Dennis*, No. 1:21-cv-01855-SEB-MG, 2022 U.S. Dist. LEXIS 69828, at *7-8 (S.D. Ind. Apr. 15, 2022) (holding that a prisoner could not overcome the "high hurdle of the presumption of impartiality" when the prisoner filed a "PREA complaint" against the hearing officer and the evidence was otherwise sufficient).

Third, the Court is unaware of any precedent which holds that sexual violence grievances have a greater impact on the impartiality of hearing officers than other grievances.

Because there is no law to support Mr. Daniels's argument that a court should differentiate between rape grievances and other grievances, Mr. Daniels has not shown that the Court made an error of law when it rejected his argument that the hearing officer was impartial. Accordingly, Mr. Daniels is not entitled to relief on this ground.

### C. Retaliation

Finally, Mr. Daniels also claims that the Court erred in concluding that the Conduct Report was not retaliatory. Dkt. 17 at p. 2. Specifically, he claims that the Conduct Report and his conviction were retaliatory because he reported the hearing officer for raping him, the hearing officer convicted him even though Mr. Daniels informed him that he was on drugs and thus could not have intentionally or knowingly grabbed Officer Thomas's vest, and that the hearing officer made misrepresentations in the video review. *Id.*

"Prisoners have a right to be free from arbitrary actions by prison officials," including false disciplinary actions based on retaliation. *Burton v. Davis*, 41 F. App'x 841, 845 (7th Cir. 2002). However, "the protection from such actions is found in the procedures mandated by due process." *Id.* Therefore, "retaliatory motive in the filing of a disciplinary charge is not a ground for relief if the subsequent disciplinary proceedings are held in accordance with due process." *Lee v. Berge*, 14 F. App'x 690, 693 (7th Cir. 2001); *see also McPherson*, 188 F.3d at 787 ("[W]e have long held that as long as procedural protections are constitutionally adequate, we will not overturn a disciplinary decision based solely because evidence indicates the claim was fraudulent."). If the procedural due process requirements of *Wolff* are satisfied, a reviewing court's role "is limited to determining whether there was sufficient evidence to support the [hearing officer]'s decision." *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987) (citing *Hanrahan v. Lane*, 747 F.2d 1137, 1141 (7th Cir. 1984)).

10

Because the Court has concluded that there is some evidence to his support conviction, Mr. Daniels's arguments fail. Accordingly, Mr. Daniels failed to demonstrate a manifest error of law or fact and he is not entitled to relief on this ground.[4]

### IV.  Conclusion

For the reasons stated above, the Court finds that Mr. Daniels has not demonstrated a manifest error of law or fact or presented newly discovered evidence. Accordingly, his motion to alter or amend the judgment pursuant to Rule 59 of the Federal Rules of Civil Procedure is **denied.**

**IT IS SO ORDERED.**

Date: 2/17/2023

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

RA'MAR DANIELS
104542
PENDLETON – CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

David Corey
INDIANA ATTORNEY GENERAL
david.corey@atg.in.gov

---

[4] The Court recognizes that after Mr. Daniels filed his motion to alter or amend, he filed a document that is labeled as a traverse. *See* dkt. 18. The Court reviewed this document and finds that is a copy of his original reply. Dkts. 13 and 18. Mr. Daniels did not identify any new errors in his traverse or demonstrate how it relates to his motion to alter or amend. Dkts. 17 and 18. Thus, the Court finds that there are no new errors raised in this filing which alter this Court's decision and that the Court need not address this filing any further. *See Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014) (A Rule 59(e) motion should not "be used to 'rehash' previously rejected arguments.").

11